STANLEY W. LANDFAIR (BAR NO. 160003)
*slandfair@mckennalong.com*
ANN G. GRIMALDI (BAR NO. 160893)
*agrimaldi@mckennalong.com*
DEBORAH L. COTE (BAR NO. 148315)
*dcote@mckennalong.com*
MCKENNA LONG & ALDRIDGE LLP
101 California Street, 41st Floor
San Francisco, CA  94111
Telephone:     (415) 267-4000
Facsimile:      (415) 267-4198

Attorneys for Applicant-For-Intervention
CROPLIFE AMERICA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PESTICIDE ACTION NETWORK NORTH AMERICA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U. S. ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States; STEPHEN L. JOHNSON, Administrator, U. S. Environmental Protection Agency, in his official capacity,<br><br>Defendants,<br><br>and<br><br>CROPLIFE AMERICA,<br><br>Applicant-for-Intervention. | CASE NO.  3:08-CV-01814-MHP<br><br>**DECLARATION OF JAY J. VROOM IN SUPPORT OF CROPLIFE AMERICA MOTION FOR LEAVE TO INTERVENE**<br><br>(Fed. R. Civ. P. 24)<br><br>**Hearing Date:  July 28, 2008**<br>**Time:  2:00 pm.**<br>**Courtroom:  15, 18th Floor** |

1    I, Jay J. Vroom, declare:

2        1.    I have personal knowledge of the facts set forth in this Declaration and if

3    necessary could testify competently thereto under oath. I make this Declaration in support of

4    CropLife America's Motion for Leave to Intervene in the above-captioned suit.

5        2.    CropLife America (referred to herein as "CLA," and formerly known as the

6    American Crop Protection Association, and before that, the National Agricultural Chemicals

7    Association) is the national, not-for-profit trade association for the plant science industry,

8    representing producers, formulators and distributors of crop protection and pest control products.

9    CLA was established in 1933, and is headquartered in Washington, D.C.

10        3.    I have served as President of CLA since 1989. My responsibilities as President

11    include serving as a public spokesperson for the association and the agricultural pesticide

12    industry, and advocating the interests of the association and its members on a broad range of

13    federal, state, and international regulatory issues.

14        4.    CLA's membership encompasses approximately forty manufacturers, formulators,

15    and distributors of agricultural pesticides. Collectively, these companies develop, manufacture,

16    formulate, and distribute the active ingredients contained in virtually all of the herbicides,

17    insecticides, fungicides, and other agricultural pesticides used by American farmers. These

18    products are essential for production of safe, high-quality, abundant and affordable food, fiber

19    and other crops.

20        5.    Since the reregistration process began in 1988, EPA has evaluated many hundreds

21    of pesticides for reregistration and issued Reregistration Eligibility Decisions or "REDs" for

22    approximately 360 pesticides, including the four pesticides that are the subject of the above-

23    captioned action: methidathion, ODM, methamidophos and ethoprop. EPA is scheduled to issue

24    REDs for approximately 24 more pesticides in 2008. This will conclude the process. The vast

25    majority of CLA's members own many of the registrations for pesticides that have been the

26    subject of these 360 already issued REDs, and 24 further REDs that EPA is scheduled to issue

27    this year, many (if not all) of which could be affected by this Court's rulings on plaintiffs' claims.

28    Indeed, two CLA members — Gowan Company, which also has moved for leave to intervene,

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -    DECLARATION OF JAY J. VROOM IN SUPPORT OF
CLA MOTION FOR LEAVE TO INTERVENE

SF:27289366.1

1    and Bayer CropScience ("Bayer"), which has not — own registrations for the pesticides at issue

2    in this lawsuit. Gowan Company owns registrations for the pesticide known as ODM and is the

3    sole registrant for the pesticide known as methidathion. Bayer owns registrations for

4    methamidophos and ethoprop.

5          6.     CLA represents the interests of its members before Congress and state legislatures,

6    and before federal and state agencies that regulate the manufacture, distribution, sale and use of

7    active ingredients and the products in which they are used. At the federal level, the manufacture,

8    distribution, sale and use of pesticides is regulated primarily by the United States Environmental

9    Protection Agency ("EPA") pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act

10   ("FIFRA"). CLA's members who are manufacturers, formulators and distributors of pesticides

11   hold FIFRA pesticide registrations. Many of these registrations are for pesticides that are the

12   subject of REDs, or for which reregistration decisions are pending. CLA and its members have

13   been actively involved in the process of reregistration for pesticides under Section 4 of FIFRA

14   since Congress mandated that requirement in the 1988 FIFRA Amendments. CLA represents its

15   members' interests before EPA, and before other federal agencies also involved in the regulation

16   of pesticides, such as the United States Department of Agriculture and the Food and Drug

17   Administration.

18         7.     CLA also represents its members' interests by monitoring related litigation to

19   identify issues of concern to the crop protection and pest control industry, and participating in

20   such actions when appropriate. Whenever necessary, CLA participates as an intervenor, *amicus*

21   *curiae*, or declarant in lawsuits which, like this one, threaten its members' interests by threatening

22   to disrupt the operation of federal or state regulatory schemes for registration, labeling, sale, and

23   use of pesticides. CLA has participated as an intervenor in lawsuits that have challenged EPA's

24   compliance with the ESA during FIFRA pesticide registrations. CLA also filed an *amicus* brief

25   in support of successful petitioners in *National Association of Home Builders v. Defenders of*

26   *Wildlife*, 127 S.Ct. 2518 (2007), in which the Court rejected the argument that the ESA

27   consultation provision applies to EPA's transfers of permit program authority to states under

28   another statute it administers, the Clean Water Act.

ɪcKENNA LONG &
ALDRIDGE LLP
ᴀᴛTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF JAY J. VROOM IN SUPPORT OF
CLA MOTION FOR LEAVE TO INTERVENE

SF:27289366.1

8.     Collectively, in order to comply with the applicable provisions of FIFRA, CLA members have invested hundreds of millions of dollars in research and testing to support their respective registrations and reregistrations.  CLA and its members who are manufacturers, formulators and distributors of pesticides have a strong interest in the property and transactions that are the subject of the above-captioned action.  Those interests include the registrations for the four pesticides that are threatened in this action, the reregistration decisions for those pesticides, the reregistration process itself, and the many other reregistration decisions that may be affected by the decision in this action.

9.     CLA has moved for leave to intervene in this action because it believes that its interests and those of its members who are manufacturers, formulators and distributors of pesticides may not be represented adequately by any of the parties in the action.  CLA expects that EPA will defend the reregistration decisions that are challenged in this action, and CLA and its members fully support EPA's goals and interests in doing so, which CLA believes are in the public interest.  Nevertheless, EPA is not in a position, as the governmental body that regulates pesticides, to represent the private interests and economic interests of CLA and its members, which are the regulated community.

10.     Even where the interests of EPA and CLA overlap, such as the general interest in preserving the integrity of the FIFRA reregistration process and the finality of REDs, CLA cannot be assured that EPA would assert all of CLA's arguments.  For example, I am informed and believe that in another lawsuit challenging the FIFRA reregistration process, *United Farm Workers of America v. EPA* (W.D.Wa., Case No. 2:04-cv-00099-RSM), a CLA member intervened to file a motion for summary judgment as to one of plaintiff's claims, on the ground that the court lacked jurisdiction to hear it.  EPA neither supported nor opposed the motion and the court granted it.  A true and correct copy of the decision in this action is attached as Exhibit A hereto.

11.     For similar reasons, CLA does not believe that the anticipated intervention by Gowan Company will be sufficient to protect the interests of CLA and all of its members.  Although Gowan Company is a CLA member and therefore shares many of the interest of other

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

DECLARATION OF JAY J. VROOM IN SUPPORT OF
CLA MOTION FOR LEAVE TO INTERVENE

SF:27289366.1

1    CLA members, Gowan Company does not necessarily share the full and comprehensive interests
2    of all CLA members in their registrations and may not be focused on the broader regulatory
3    issues presented by plaintiffs' claims, so that Gowan Company may not be positioned to represent
4    the interests of other CLA members if CLA is not allowed to intervene.  For example, plaintiffs,
5    EPA and Gowan Company might find a way to settle plaintiffs' claims as they affect Gowan
6    Company's products and registrations, in a manner that may compromise the interests of other
7    CLA members with regard to their registrations for other products, or on terms that place new
8    burdens on the reregistration process to which CLA and its members might object.

9          I declare under penalty of perjury that the foregoing is true and correct.

10          Executed in Washington, D.C. on June 17, 2008.

Jay J. Vroom

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF JAY J. VROOM IN SUPPORT OF
CLA MOTION FOR LEAVE TO INTERVENE

SF:27289366.1

EXHIBIT "A"

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  UNITED FARMWORKERS OF AMERICA, et
   al.,

10                   Plaintiff,                              CASE NO. C04-099RSM

11         v.                                                ORDER DISMISSING CLAIM ONE

12  ADMINISTRATOR, U.S. ENVIRONMENTAL
    PROTECTION AGENCY,

13
                     Defendant.
14

15                               **I.  INTRODUCTION**

16         This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment as to

17  Claim One Pertaining to Azinphos-Methyl (Dkt. # 154), together with cross-motions by the Defendant

18  (Dkt. # 160) and Intervenors Makhteshim Agan of North America, Inc. and Bayer Cropscience LP (Dkt.

19  # 167).  The United Farm Workers of America and four other organizations brought an action for

20  injunctive and declaratory relief under the Federal Insecticide, Fungicide and Rodenticide Act, challenging

21  the EPA's Interim Reregistration Eligibility Decisions ("IREDs") for two pesticides, azinphos-methyl

22  ("AZM") and phosmet.  After the Plaintiffs moved for summary judgment as to their AZM claim,

23  Intervenors Makhteshim Agan of North America, Inc. and Bayer Cropscience LP cross motioned for

24  summary judgment arguing, _inter alia_, that this court lacks jurisdiction to review the Administrator's

25  action.

26         For the reasons set forth below, the Court GRANTS the Intervenors' motion to dismiss.

27
    ORDER GRANTING VOLUNTARY
28  DISMISSAL OF CLAIM  3 - 1

1

## II. STATUTORY BACKGROUND

2      The Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136y, establishes a

3 regulatory scheme to control the sale, use, and labeling of pesticides.  Under FIFRA, a pesticide may not

4 be sold or used unless it has been registered by the EPA.  Id. § 136a(a).  A pesticide cannot be registered

5 until the EPA determines that "it will perform its intended function without unreasonable adverse effects

6 on the environment."  Id. § 136a(c)(5)(C).  FIFRA defines "unreasonable adverse effects" to mean "any

7 unreasonable risk to man or the environment, taking into account the economic, social, and

8 environmental costs and benefits to the use of any pesticide . . . ."  Id. § 136(bb).

9      In 1988, Congress amended FIFRA to require, with some exceptions not here relevant, the

10 reregistration of each "registered pesticide containing any active ingredient contained in any pesticide first

11 registered before November 1, 1984."  Id. § 136a-1.  The statute sets forth a specific, five-phase process

12 for reregistration determinations.  Id. § 136a-1(a)-(g).  The last phase requires that the Administrator

13 "conduct a thorough examination of all data submitted" in support of reregistration, determine whether

14 the "pesticide meets the requirements of [7 U.S.C. § 136a(c)(5)(C)]," and then take appropriate

15 regulatory action.  Id. §§ 136a-1(b), (g)(1), (g)(2)(C).  The agency may either reregister the pesticide by

16 issuing a reregistration eligibility decision ("RED") or, if it determines that the pesticide should not be

17 reregistered, bring an action to cancel or suspend the registration.  See id. §§ 136a-1(g)(2)(C), (D).

18      Pesticides are also regulated by the Federal Food Drug and Cosmetic Act ("FFDCA"), 21 U.S.C.

19 §§ 301-394.  FFDCA requires the EPA to establish "tolerances" for maximum allowable pesticide

20 residues on agricultural products.  See id. § 346a.  The tolerance is the maximum permissible level of

21 pesticide residue that has been determined to be "safe" on a particular food.  Id. § 346a(b)(2)(A).

22      In 1996, Congress enacted the Food Quality Protection Act ("FQPA"), which amended both

23 FIFRA and FFDCA.  The FQPA added the requirement that the EPA reassess existing tolerances as part

24 of phase 5 of the FIFRA reregistration process.  7 U.S.C. § 136a-1(g)(2)(E).  The FQPA also required

25 that, in establishing tolerances, EPA consider "the cumulative effects of . . . substances that have a

26 common mechanism of toxicity."  21 U.S.C. §§ 346a(b)(2)(D)(v).

27

28  ORDER GRANTING VOLUNTARY
    DISMISSAL OF CLAIM  3 - 2

1    Because of the time necessary to complete the FQPA cumulative risk assessments, the EPA has

2    adopted the practice of issuing interim REDs ("IREDs") for pesticides that share a common mechanism

3    of toxicity with a large number of other chemicals. *See* 68 Fed. Reg. 44770-71 (July 30, 2003).  Both

4    pesticides at issue in this case, AZM and phosmet, are part of a family of chemicals known as

5    organophosphates, and had been issued IREDs pending assessment of their cumulative risk.

6                                      **III. FACTUAL BACKGROUND**

7           In 2001, the EPA issued an IRED for AZM.  AR (Administrative Record) 683.  The EPA found

8    that all assessed uses were ineligible for reregistration as labeled, but found eight uses that would be

9    eligible for reregistration if certain conditions were met.[1]  Id. at 70.  Because EPA expected the risk-

10   benefit balance for AZM to change over the next four years, it limited the reregistration to four years, and

11   called for the AZM producers to submit renewal applications in 2004.  Id.

12          In January 2004, the United Farm Workers and four other organizations filed an initial complaint

13   in the United States District Court for the Western District of Washington, arguing that EPA's IRED was

14   arbitrary and capricious.  AZM producers Makhteshim Agan of North America, Inc., and Bayer

15   Cropscience LP intervened in the present action, and submitted applications to renew the use of AZM

16   and phosmet.  In January 2006, UFW and EPA entered into a settlement agreement in which the EPA

17   agreed to consider new evidence and make determinations on the continued use of AZM and phosmet.

18   Dkt. # 114-2, at 1-2.  The Plaintiffs and the EPA jointly moved to stay the present action until September

19   5, 2006 to allow implementation of the settlement agreement.  Dkt. # 115, at 1.

20          After receiving public comment, the EPA issued a proposed decision on June 9, 2006.  AR 1355.

21   The EPA determined that five uses (Brussels sprouts, nursery stock, and three nut crops) should be

22   cancelled in 2007 and that another five uses should be phased out over a four-year period.  AR 1355 at

23   10-11.  The EPA published notice of its proposed decision in the Federal Register and requested public

24   comment.  AR 1353.

25   ─────────────────

26        [1] EPA also found seven uses that would be phased out over four years; the rest of the uses were
     cancelled immediately.  AR 683 at 68-70.

27
      ORDER GRANTING VOLUNTARY
28   DISMISSAL OF CLAIM  3 - 3

On November 15, 2006, Bayer submitted an amendment to its AZM applications, agreeing to voluntarily cancel its AZM registration under certain conditions. Bayer agreed to cancel its Brussel sprout and nursery stock uses in 2007, cancel the three nut crop uses in three years, and cancel the remaining five uses in six years. AR 1679 at 1-2. Bayer requested, inter alia, that EPA consider extending these five AZM uses beyond 2012 if EPA "determines for any of [these] uses that the benefits of continued registration outweigh the risks." Id. at 3.

EPA issued a final determination on November 16, 2006. AR 1459. EPA found that Brussels sprouts and nursery stock uses should be cancelled in 2007; the three nut crop uses should be phased out over three years; and the remaining five uses should be phased out over six years. Id. 10-31. EPA also agreed to "continue to assess the need for use of AZM during the phase-out period and to evaluate . . . whether to amend the cancellation order that phases out all AZM use if EPA concludes there remains a demonstrated need for AZM to address key pests." Id. at 7, 9.

On April 27, 2007, the Plaintiffs filed a Third Amended Complaint. Doc. 140. Claim One asserted that the six-year extension of AZM use was arbitrary, capricious, and violated FIFRA. Id. at 25. The Plaintiffs moved for summary judgment on this claim, Doc. 154, and the Intervenors cross motioned for summary judgment arguing, inter alia, that this court lacks jurisdiction to review the Administrator's action.[2]

## IV. ANALYSIS

Judicial review of the Administrator's decisions under FIFRA is governed by 7 U.S.C. § 136n. Section 136n provides:

(a) District court review – Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.

(b) Review by court of appeals – In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in

---

[2] The EPA does not contest this court's jurisdiction to hear the Plaintiffs' claim. Dkt. # 187, at 14.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM  3 - 4

the United States court of appeals . . . .  Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part.

7 U.S.C. § 136n.

An additional jurisdictional provision is included in FIFRA's reregistration section, 7 U.S.C. § 136a-1.  Under this section, "[a]ny failure of the Administrator to take any action required by this section shall be subject to judicial review under the procedures prescribed by section 136n(b) of this title."  7 U.S.C. § 136a-1(m)

The Intervenors argue that jurisdiction in this case lies in the court of appeals rather than the district court for two reasons.  First, they argue that the Plaintiffs are challenging the Administrator's failure to take an action required by 7 U.S.C. § 136a-1.  Thus, pursuant to 7 U.S.C. § 136a-1(m), judicial review is governed by § 136n(b).  Doc. 167, at 8-9.  Second, they argue that § 136n(b) controls because the Administrator's order followed a "public hearing."  Doc. 195, at 2.

A. Administrator's failure to take an action required by 7 U.S.C. § 136a-1.

The Intervenors argue that "[t]he crux of [Plaintiffs'] allegations is that in reaching its Final Decision 'EPA *failed* to take into account the full social and environmental costs' and '*fail[ed]* to consider and incorporate into its assessments' appropriate health and environmental costs."  Dkt. # 167, at 4 (citing Dkt. # 140, at ¶¶ 77-78) (emphasis and third alteration in original).  The last phase of the reregistration process requires the Administrator to determine whether the "pesticide meets the requirements of [§ 136a(c)(5)(C)]."  7 U.S.C. § 136a-1(g)(2)(C).  Section 136a(c)(5)(C) requires the EPA to engage in a risk analysis in which it determines whether the pesticide poses "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits to the use of any pesticide . . . ."  Id. § 136(bb).  The Intervenors assert that, because phase five directs the Administrator to engage in the risk-benefit analysis under § 136a(c)(5)(C), the Plaintiffs' complaint that the Administrator "failed" to weigh certain evidence is a claim that Administrator failed to take an action required by 7 U.S.C. § 136a-1.  Thus, review lies in the court of appeals.

This argument reads § 136a-1(m) too broadly.  Section 136a-1(m) governs challenges to the Administrator's failure to take any action required by the reregistration statute, 7 U.S.C. § 136a-1.

ORDER GRANTING VOLUNTARY
DISMISSAL OF CLAIM  3 - 5

1  Section 136a-1 requires that the Administrator perform the risk-benefit analysis as part of phase 5. The

2  Plaintiffs in this case do not argue that the Administrator failed to perform the risk-benefit analysis under

3  § 136a(c)(5)(C). Instead, they contest the result of this analysis and the method by which the

4  Administrator reached this result.[3] Their challenge falls outside the scope of § 136a-1(m).

5      This result harmonizes with the broader structure of FIFRA's judicial review provisions. The

6  risk-benefit analysis required by § 136a(c)(5)(C) applies to <u>all</u> pesticide registration under FIFRA. Under

7  the Intervenors' reading, challenges to the Administrator's initial risk assessment could lie in either the

8  district courts or the courts of appeals, 7 U.S.C. § 136n, whereas challenges to EPA's risk assessment

9  during the reregistration process would only lie in the courts of appeals. It is unlikely that Congress

10  intended this result.

11      B. <u>Order following a public hearing</u>.

12      The Intervenors next argue that jurisdiction lies in the court of appeals rather than the district

13  court because the Plaintiffs are contesting "the validity of any order issued by the Administrator following

14  a public hearing." 7 U.S.C. § 136n(b). The court agrees.

15      The controlling case on this issue is <u>Northwest Food Processors Association v. Reilly</u>, 886 F.2d

16  1075 (9th Cir. 1989). In <u>Northwest Food Processors</u>, the EPA administrator issued a notice of intent to

17  cancel all registrations of the pesticide dinoseb. <u>Id.</u> at 1076. Two dinoseb registrants, Cedar Chemical

18  Corp. and Drexel Chemical Co., challenged the cancellation proceedings. While the cancellation

19  proceedings were still pending, Cedar and Drexel entered into a settlement agreement with the EPA

20  providing for, <u>inter alia</u>, the cancellation of dinoseb, but allowing the limited use of existing stocks of the

21  pesticide. <u>Id.</u> at 1076-77. After an ALJ approved the settlement and the EPA Administrator affirmed

22  this decision, interested parties brought a petition for review challenging both (1) the cancellation of the

23  dinoseb registrations and (2) the existing stocks decision. The Ninth Circuit found that it had jurisdiction

24  to hear the challenge to the cancellation order, but not to the existing stocks decision.

25  ──────────────

26      [3] The Intervenors' description mischaracterizes the nature of the Plaintiffs' complaint. While the
   Plaintiffs argue, in part, that the EPA failed to incorporate appropriate health and environmental costs,
   they allege a litany of other flaws in the EPA's analysis. Dkt. # 140, at 25-26.

27

28  ORDER GRANTING VOLUNTARY
   DISMISSAL OF CLAIM  3 - 6

1    In upholding its jurisdiction to hear the challenge to the cancellation order, the court laid out the

2    test for whether or not a decision is issued following a "public hearing": section "136n(b)'s public hearing

3    requirement is satisfied when the EPA conducts proceedings in which interested parties are afforded an

4    opportunity to present their positions by written briefs and a sufficient record is produced to allow

5    judicial review." Id. at 1077 (citing Envtl. Def. Fund, Inc. v. Costle, 631 F.3d 922, 926-32 (D.C. Cir.

6    1980)). The court found that the cancellation proceedings met both prongs. First, the court noted that,

7    in issuing the cancellation order, the Administrator considered the ALJ's decision alongside "various

8    parties' written exceptions to the decision, objections to the settlement, and responses in support of the

9    decision and settlement" and "[t]he proceedings were conducted pursuant to notice." Id. at 1078.

10    Second, the court found that EPA's administrative record was adequate to permit judicial review. Id.

11    Under Northwest Food Processors, the reregistration decision regarding AZM was made

12    "following a public hearing." First, interested parties had the opportunity to present their positions in

13    writing. When the EPA issued a proposed decision on June 9, 2006, it published notice in the Federal

14    Register and requested public comment.[4] AR 1353. Since the EPA issued its initial 2001 IRED,

15    hundreds of public submissions were made regarding the reregistration of AZM, including comments by

16    Plaintiff EarthJustice. AR 1338-1348, 1389-90. The EPA considered these comments in making its final

17    determination. Dkt. # 160, at 6, 8 (United States' Cross-Motion and Opposition to Plaintiffs' Partial

18    Motion for Summary Judgment). Second, there is a lengthy administrative record, consisting of the

19    EPA's determinations, public comments, and other supporting documentation. Notably, the Plaintiffs

20    challenge the manner in which the EPA performed its risk-benefit calculation as arbitrary, capricious, and

21    contrary to FIFRA. This controversy can be resolved on the administrative record, without the need for

22    further fact finding. See Costle, 631 F.2d at 931 (finding that appellate court review is appropriate where

23    no facts are in issue). Because the reregistration decision was made after a public hearing, proper

24    jurisdiction lies in the court of appeals. Accord Nat'l Grain Sorghum Producers Ass'n, Inc. v. EPA, No.

25

26    [4] The EPA had previously published draft AZM ecological and benefit assessments for public comment, and considered these comments in drafting the June 9 proposed decision. AR 1254; Dkt. # 160, at 6.

27

28    ORDER GRANTING VOLUNTARY
      DISMISSAL OF CLAIM  3 - 7

1  95-1244, 1996 WL 250327, at *6-8 (D.C. Cir. 1996) (unpublished opinion) (court of appeals has

2  jurisdiction to review EPA's denial of a petition to reinstate pesticide use where administrative record is

3  sufficient to allow appellate review).

4      During oral argument, the Plaintiffs, citing Northwest Food Processors, argued that the

5  Administrator's decision regarding the Intervenors' continued use of AZM was really a decision

6  regarding existing stocks and, thus, it did not follow a public hearing. The court rejects this argument.

7  The administrative record does not indicate that the Administrator's final decision was intended to allow

8  the Intervenors to use their existing stocks of AZM. To the contrary, it indicates that EPA will

9  reevaluate the risks and benefits of using AZM for certain uses in 2012.

10     In any event, the Plaintiffs' argument misconstrues the reasoning of Northwest Food Processors.

11  In Northwest Food Processors, the EPA administrator had determined that "'[e]xisting stocks can be

12  included in a FIFRA cancellation hearing' only when 'the notice calling the hearing voluntarily identifies

13  and includes existing stocks as an issue for examination.'" 886 F.2d at 1078 (citation omitted). Because

14  the notice did not identify existing stocks as an issue to be resolved in the hearing, the Administrator

15  found that "the existing stocks issues were not legally a part of the cancellation hearing." Id. Relying on

16  this determination, the Ninth Circuit held that, because the existing stocks provisions were not legally part

17  of the cancellation hearing, the provisions could not be considered part of an order "following a public

18  hearing." Id.

19     Northwest Food Processors' holding was premised on EPA's determination that the existing

20  stock determination was not legally part of the proceeding. EPA has made no such determination in this

21  case. Assuming, arguendo, that EPA's determination in the dinoseb proceeding is binding in the AZM

22  proceeding, Plaintiffs' argument still fails: EPA's notice clearly indicated that the phase-out of AZM was

23  going to be resolved in the hearing. AR 1353.

24     Lastly, the Plaintiffs argue that jurisdiction lies in the district court, quoting Costle's statement

25  that:

26      [t]he pattern [under FIFRA] seems to be that decisions regulating more strictly may be challenged
        in administrative hearings, those regulating less strictly may not. Thus, persons seeking more

27

28  ORDER GRANTING VOLUNTARY
    DISMISSAL OF CLAIM  3 - 8

1  stringent regulation may sue in the district court without first enduring an administrative hearing;
2  those complaining of regulation as too strict must first exhaust their administrative remedy of a
   formal hearing before seeking judicial review.

3  631 F.3d at 937, cited in Dkt. # 196, at 3. Costle does not support the Plaintiffs' argument. The quoted

4  language is Costle was made in the context of determining whether the Costle plaintiffs were required to

5  exhaust their administrative remedies, not in the context of the allocation of jurisdiction under § 136n(b).

6

7                              **V. CONCLUSION**

8        Having reviewed Plaintiffs', Defendants' and Intervenors' motions, the parties' replies, and the

9  declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and

10 orders:

11        (1)  Plaintiffs' Motion for Partial Summary Judgment as to Claim One Pertaining to Azinphos-

12 Methyl (Dkt. # 154) is DENIED;

13        (2) Intervenors Makhteshim Agan of North America, Inc. and Bayer Cropscience LP's Cross-

14 Motion for Partial Summary Judgment (Dkt. # 167) is GRANTED.  Count One of Plaintiffs' Third

15 Amended Complaint is DISMISSED with prejudice.

16        (3) Defendants' Cross-Motion for Summary Judgment (Dkt. # 160) is DENIED as moot.

17

18        DATED this 16th day of May, 2008.

19

20                                                    RICARDO S. MARTINEZ
21                                                    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28   ORDER GRANTING VOLUNTARY
     DISMISSAL OF CLAIM  3 - 9