UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PESTICIDE ACTION NETWORK NORTH AMERICA, et al., | No. C 08-1814 MHP |
| Plaintiffs, | **MEMORANDUM & ORDER** |
| v. | **Re: Defendant-Intervenors Gowan Company and CropLife America's Joint Motion For Stay of Action and Defendant United States Environmental Protection Agency's Motion For Stay of Action** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants, | |
| _____/ | |

     Plaintiff Pesticide Action Network North America ("PANNA") and others brought this suit against the United States Environmental Protection Agency ("EPA") and others, alleging violations of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C., sections 136–136y, and the Endangered Species Act ("ESA"), 16 U.S.C. sections 1531–44, in connection with the EPA's "reregistration" of four pesticides. Before the court are defendant-intervenors Gowan Company and CropLife America's joint motion and defendant EPA's motion to stay the proceedings pending the Ninth Circuit's expedited review of United Farm Workers v. EPA, No. 08-35528 ("UFW") (an appeal from United Farm Workers v. EPA, 2008 WL 2117114 (W.D. Wash. 2008)). EPA also moves to stay the proceedings in two related cases before this court, PANNA v. EPA, No. 08-3542, and United Farm Workers v. EPA, No. 08-3595. Defendants and intervenors contend that the Ninth Circuit's decision in UFW will bear on plaintiffs' FIFRA and ESA claims, and therefore

1  warrant a stay of the entire case.  Plaintiffs agree that a stay of the FIFRA claims is appropriate but
2  oppose staying the ESA claims.  The court has considered the parties' arguments, and for the reasons
3  stated below, enters the following memorandum and order.

BACKGROUND

I.     Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") Claims

FIFRA establishes a regulatory scheme for the distribution, sale, and use of pesticides.  7 U.S.C. §§ 136–136y.  Under FIFRA, a pesticide may not be distributed or sold in the United States unless it has been registered by the EPA.  7 U.S.C. § 136a(a).  Before the EPA may register a pesticide, an applicant must show that the pesticide "will perform its intended function without unreasonable adverse effects on the environment."  7 U.S.C. § 136a(c)(5)(C).  FIFRA defines "unreasonable adverse effects on the environment" as "(1) any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from residues that result from a use of a pesticide."  7 U.S.C. § 136(bb).

In 1988, Congress amended the FIFRA to require the EPA to reregister pesticides containing any active ingredient in a pesticide registered before November 1, 1984.  7 U.S.C. § 136a-1(a).  The five-phase reregistration process culminates in the issuance of a Reregistration Eligibility Decision ("RED"), or, for pesticides which are not found to be eligible, the cancellation or suspension of the registration.  7 U.S.C. §§ 136a-1(b), (g)(2)(C), (D).  A further amendment to FIFRA requires assessing the cumulative effect of pesticides sharing a "common mechanism of toxicity" as part of the reregistration process.  See 7 U.S.C. § 136a-1(g)(2)(E), 21 U.S.C. § 346a(b)(2)(D)(v).  Due to the time necessary to complete these additional assessments, the EPA issues Interim Reregistration Eligibility Determinations ("IREDs") for each individual pesticide in the cumulative assessment group until the assessments are completed.  See 68 Fed. Reg. 44770–71 (July 30, 2003).

The four pesticides at issue in this case—methidathion, oxydemeton-methyl ("ODM"), methamidophos and ethoprop—are members of a group of pesticides known as organophosphates.  The EPA completed IREDs for the four pesticides between 2000 and 2002, and issued their final

1  REDs on July 31, 2006. Plaintiffs bring their reregistration challenges under FIFRA's judicial
2  review provision. See FIFRA § 16(a), 7 U.S.C. § 136n(a). In their complaint, plaintiffs allege that
3  EPA acted arbitrarily, capriciously, and in violation of FIFRA by failing to assess, under FIFRA's
4  "unreasonable adverse effects" standard, the risks and benefits of the four pesticides at issue.
5  Compl. ¶¶ 116-125. In particular, plaintiffs contend that EPA inadequately investigated the risks
6  posed to humans and the environment, and failed to fully assess the benefits to growers and society
7  from continued availability of the pesticides. Id. at ¶¶ 118-25. In the last of their FIFRA-based
8  claims, plaintiffs allege that EPA recognized that there were "data gaps" relating to the risks and
9  benefits of certain pesticide uses, yet failed to address them before issuing the final REDs. Id. at ¶¶
10 126-27.

11 II.     Endangered Species Act ("ESA") Claims

12      ESA requires each federal agency to "insure that any action authorized, funded, or carried
13 out by such agency is not likely to jeopardize the continued existence of any endangered species or
14 threatened species or result in the destruction or adverse modification of habitat of such species
15 which is determined by the Secretary...to be critical." ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2). ESA
16 also requires the agency to consult with the National Marine Fisheries Service ("NMFS") and/or the
17 United States Fish and Wildlife Service ("FWS") whenever the agency takes an action that "may
18 affect" a listed species or the species' critical habitat. Id.; see also 50 C.F.R. § 402.14(a). In
19 addition, ESA prohibits federal agencies, after the initiation of consultation under ESA section
20 7(a)(2), from making any irreversible or irretrievable commitment of resources if doing so would
21 foreclose the implementation of reasonable and prudent alternatives. See ESA § 7(d), 16 U.S.C. §
22 1536(d).

23      Plaintiffs bring their ESA claims pursuant to the ESA's citizen suit provision, which provides
24 a private right of action. Compl.¶ 7; see 16 U.S.C. § 1540(g)(1) ("any person may commence a civil
25 suit to enjoin [another], including the United States and any other governmental agency . . . alleged
26 to be in violation of any provision of this [Act] or regulation issued under the authority [of this
27 Act]."). Plaintiffs allege that EPA is in violation of ESA's consultation requirements by
28 reregistering the four pesticides before completing the ESA-mandated consultations. Compl. ¶¶ 132,

1  135, 138, 141; see 16 U.S.C. § 1536(a)(2). According to plaintiffs, EPA has commenced but has not
2  finished evaluating the effect of the pesticides on threatened and endangered animals living in the
3  counties where the pesticides' uses are authorized, including the endangered San Joaquin kit fox,
4  endangered Least Bell's vireo, and threatened Western snowy plover. Compl. ¶¶ 131, 134, 137, 140.
5  Moreover, plaintiffs allege that EPA has begun to initiate but has not completed consultations on the
6  effects of the pesticides on the California red-legged frog and certain salmonid populations. Id. at ¶¶
7  133, 136. Plaintiffs also contend that EPA is in violation of ESA section 7(d) because continued
8  uses of the pesticides prior to completion of the various consultations makes "irreversible and
9  irretrievable commitments of resources that will foreclose the implementation of reasonable and
10 prudent alternatives that may result" from the completed consultations. Id. at ¶¶ 133, 136, 139, 142;
11 see 16 U.S.C. § 1536(d).

12     Aside from declaratory relief, plaintiffs request that EPA make new REDs for the four
13 pesticides by properly following FIFRA and ESA requirements. Compl. ¶ 5. Plaintiffs also request
14 interim protective measures to prevent harm to bystanders and threatened and endangered species
15 while the EPA makes new reregistration decisions. Id.

16 III.    United Farm Workers v. EPA ("UFW")

17     In UFW, the Ninth Circuit will consider whether circuit courts of appeals, rather than district
18 courts, have jurisdiction over certain FIFRA pesticide registration challenges to REDs. United Farm
19 Workers of America and three other organizations who are co-plaintiffs in the instant action,[1]
20 brought a FIFRA action in the United States District Court for the Western District of Washington
21 alleging that EPA's decision to issue IREDs for two organophosphate pesticides, azinphosmethyl
22 ("AZM") and phosmet, was arbitrary and capricious. UFW, 2008 WL 2117114 at *1. On a motion
23 for summary judgment of the AZM claims, EPA argued that the court lacked subject matter
24 jurisdiction under FIFRA's judicial review provisions. Id. at *3. FIFRA section 16 provides,

25     (a) District court review – Except as otherwise provided in this subchapter, the refusal
        of the Administrator to cancel or suspend a registration or to change a classification
26     not following a hearing and other final actions of the Administrator not committed to
        the discretion of the Administrator by law are judicially reviewable by the district
27     courts of the United States.

28     (b) Review by court of appeals – In the case of actual controversy as to the validity of
        any order issued by the Administrator following a public hearing, any person who

4

will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals...within 60 days after the entry of such order... Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part.

7 U.S.C. § 136n.

While plaintiffs argued that the district court could properly hear the action under FIFRA section 16(a), EPA asserted jurisdiction of the court of appeals under FIFRA section 16(b). 2008 WL 2117114 at *3. Finding that the IRED for AZM had been issued "following a public hearing," the court ruled that the court of appeals has exclusive jurisdiction pursuant to FIFRA section 16(b). Id. at *4 (citing Northwest Food Processors Assoc. v. Reilly, 886 F.2d 1075, 1077) (9th Cir. 1989) ("section '136n(b)'s public hearing requirement is satisfied when the EPA conducts proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review.'").

The UFW court found that both prongs of the public hearing requirement were met in its case because (a) "hundreds of public submissions" were considered by the EPA during a comment period before it made its final AZM determinations, and (b) there was "a lengthy administrative record, consisting of the EPA's determinations, public comments, and other supporting documentation." Id. at *5. The court concluded that plaintiffs' challenge to the EPA's risk-benefit calculation could be resolved on the administrative record, without the need for further fact finding. Id. Plaintiffs stipulated that the same line of reasoning would compel dismissal of their phosmet claims and the case was dismissed. Grimaldi Dec., Exh. C. Plaintiffs timely appealed the dismissal and the Ninth Circuit concluded accelerated briefing on September 26, 2008.

LEGAL STANDARD

A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North Am. Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). Use of this power "calls for the exercise of judgment, which must weigh competing

5

interests and maintain an even balance." <u>Landis</u>, 299 U.S. 254–55. In determining the propriety of a stay, courts consider the possible effects on judicial economy as well as the potential harm to the parties and the public interest. <u>See, e.g.</u>, <u>Dependable Highway Express v. Navigators Ins. Co.</u>, 498 F.3d 1059 1066-67 (9th Cir. 2007).

The party seeking to stay the proceedings carries a "heavy burden of establishing that such an order would be appropriate." <u>See, e.g.</u>, <u>Midkiff v. Tom</u>, 702 F.2d 788, 801 (9th Cir. 1983), <u>rev'd on other grounds sub nom</u>, <u>Hawaii Hous. Auth. v. Midkiff</u>, 467 U.S. 229 (1984); <u>accord</u> <u>Clinton v. Jones</u>, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."). However, it remains within a district court's discretion to grant or deny such a stay. <u>See</u> <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1105, 1109 (9th Cir. 2005).

<u>DISCUSSION</u>

Plaintiffs bring claims under two different statutory frameworks. Challenges to FIFRA registrations are governed by FIFRA itself, which provides for jurisdiction in either district courts or courts of appeals depending on the circumstances. <u>See</u> 7 U.S.C. § 136n. By contrast, ESA provides a private right of action in district court. 16 U.S.C. § 1450(c). Defendants and intervenors argue that the Ninth Circuit's decision in <u>UFW</u> will bear on both the FIFRA and ESA claims. Plaintiffs agree that a stay of the FIFRA claims is appropriate, but oppose a stay of the ESA claims and of the administrative record deadlines.

I.      <u>FIFRA Claims</u>

The parties have stipulated that the subject matter jurisdiction at issue in <u>UFW</u> will affect the court's jurisdiction over FIFRA claims in the instant matter. Accordingly, the motion to stay as to the FIFRA claims is GRANTED.

II.     <u>ESA Claims</u>

The parties dispute whether the Ninth Circuit's decision in <u>UFW</u> will affect the jurisdictional footing of plaintiffs' ESA claims. Defendants acknowledge that there are no ESA claims at issue in <u>UFW</u>. However, they contend that if the Ninth Circuit finds that FIFRA section 16(b) applies in <u>UFW</u>, then the court of appeals' exclusive jurisdiction over FIFRA claims will affix to any related

6

1  challenges, including those based on violations of other statutes such as ESA.  All defendants also
2  claim that absent a stay, they will move to dismiss the present litigation and the related cases under
3  the same theory at issue in the UFW appeal.  For these reasons, defendants argue it is prudent to wait
4  for the determination of FIFRA-related jurisdiction in UFW before litigating the ESA claims.

5  Conversely, plaintiffs maintain that ESA's citizen suit provision provides an independent
6  basis for this court's jurisdiction, making it unnecessary to wait for the Ninth Circuit's decision.  See
7  16 U.S.C. § 1540(g) ("[t]he several district courts of the United States . . . shall have jurisdiction
8  over any actions arising under [the ESA].").  The threshold issue for this court to resolve is whether
9  jurisdiction of the ESA claims is tied to—and effectively subsumed by—the disposition concerning
10  the jurisdiction for the FIFRA claims in UFW, so as to warrant a stay of this entire case.

11  Before proceeding to the main analysis, it is worth noting that the jurisdictional dispute
12  defendants anticipate may not come to fruition even if UFW is affirmed.  If the Ninth Circuit holds
13  that FIFRA section 16(b) controls jurisdiction over FIFRA reregistrations, then plaintiffs' FIFRA
14  claims would likely be time-barred.  Such challenges must be filed in a court of appeals within sixty
15  days of an order's entry and plaintiffs did not bring their FIFRA claims until two years after the
16  REDS were issued.  See 7 U.S.C. § 136n(b); see also Carpenter v. Dep't of Transp., 13 F.3d 313,
17  317 (9th Cir. 1994) (dismissing petition as untimely and refusing to equitably toll Hobbs Act's sixty-
18  day time limit when the case was transferred to court of appeals from district court pursuant to the
19  Act's exclusive review provision).  Indeed, plaintiffs concede this possibility.  Plf.'s Opp. at 6.[2]
20  Moreover, FIFRA section 16(b) only triggers the exclusive jurisdiction of the court of appeals once a
21  petition for judicial review is submitted.  See 7 U.S.C. § 136n(b) ("*Upon the filing of such petition*
22  the [court of appeals] shall have exclusive jurisdiction." (emphasis added)).  If plaintiffs are time-
23  barred from petitioning the Ninth Circuit, there would be no exclusive jurisdiction provision to
24  which to affix the ESA claims in the manner defendants propose.  Plaintiffs might then rely solely
25  on ESA's jurisdictional provision, which vests the district court with jurisdiction.

26  There is no controlling precedent that considers the interaction between the jurisdictional
27  provisions of FIFRA section 16(b) and the ESA.  The court therefore considers related Ninth Circuit
28  precedent addressing the interaction between similar regulatory statutes with exclusive jurisdiction

7

1  provisions, and the ESA. For the reasons stated below, the court finds that FIFRA section 16(b),
2  should it be found to apply in <u>UFW</u>, will limit jurisdiction of the ESA claims, and therefore warrants
3  a stay of the instant case.

4        A.    <u>Substance of Claims</u>

5        Foremost, the recent Ninth Circuit decision in <u>American Bird Conservancy v. Fed. Commc'n
6  Comm'n</u> ("<u>American Bird</u>"), 2008 WL 4459086, *1 (9th Cir. 2008), <u>aff'g</u> 408 F. Supp. 2d 987 (D.
7  Hawai'i 2006), establishes that district courts lack jurisdiction over ESA claims when the substance
8  of those claims essentially attacks a regulatory statute that vests exclusive jurisdiction in the courts
9  of appeals. In <u>American Bird</u>, environmental organizations sued the FCC through an ESA citizen
10 suit in district court, alleging in part that the FCC violated the ESA by failing to consult with the
11 Secretary of the Interior before registering communications towers. <u>Id.</u> at *2. The Communications
12 Act, 47 U.S.C., section 151 <u>et seq.</u>, which integrates the Hobbs Act, 28 U.S.C., section 2342, vests
13 the federal circuit courts of appeal with exclusive subject matter jurisdiction over actions to "enjoin,
14 set aside, annul, or suspend any order of the [FCC]" once a claim is submitted to the court within
15 sixty days of the order. <u>Id.</u>; <u>see</u> 47 U.S.C. § 402(a); 28 U.S.C. § 2342.

16       In finding that jurisdiction was proper in the courts of appeals rather than the district courts,
17 the Ninth Circuit reasoned that "[t]he tower registrations are . . . inextricably intertwined with the
18 FCC's obligation to consult with the Secretary . . . American Bird cannot elude the Communications
19 Act's exclusive review provision by disguising its true objection to the [FCC's failure to consult the
20 Secretary]." 2008 WL 4459086 at *3. Thus, although plaintiffs brought suit under the ESA only to
21 challenge FCC's failure to consult, the Ninth Circuit treated the substance of the ESA claims as
22 attacks on the FCC's tower registration decisions, which are properly adjudicated pursuant to the
23 Communications Act's exclusive jurisdiction provisions, i.e., by circuit courts.

24       Applying this recent precedent, jurisdiction of plaintiffs' ESA claims here would likely be
25 subsumed by FIFRA section 16(b)'s exclusive jurisdiction provision, if it is found to apply in the
26 first instance. The current case is somewhat distinguishable from <u>American Bird</u> in that plaintiffs
27 here directly challenge the pesticide reregistrations under the regulatory statute, FIFRA, and
28 separately challenge the EPA's failure to consult through ESA. However, these differences do not

8

1    temper the applicability of American Bird.  American Bird involved an ESA failure-to-consult claim
2    that the court characterized as essentially challenging tower registrations.  Here, plaintiffs have an
3    ESA failure-to-consult claim and literally challenge the pesticide reregistrations.  In both cases, the
4    court is confronted with an ESA failure-to-consult claim and an attack (direct or indirect) on agency
5    registrations, which in turn invokes the regulatory statutes that govern those registrations and their
6    accompanying exclusive jurisdiction provisions.  Thus, the holding in American Bird remains
7    compelling.
8           The Ninth Circuit cases that informed American Bird similarly suggest that FIFRA section
9    16(b) subsumes ESA's general district court jurisdiction provision.  In California Save Our Streams
10   Council, Inc. v. Yeutter, 887 F.2d 908, 910 (9th Cir. 1989), environmental groups alleged that the
11   Federal Energy Regulatory Commission ("FERC"), acting under the Federal Power Act ("FPA"),
12   violated the National Environmental Policy Act ("NEPA") and the American Indian Religious
13   Freedom Act ("AIRFA").  Like the later plaintiffs in American Bird, the environmental groups
14   argued that since they brought suit under NEPA and AIRFA, and not under the FPA (which vests
15   exclusive jurisdiction in the courts of appeals), an independent statutory basis existed for district
16   court jurisdiction.  Id. at 911.  The Ninth Circuit rejected this argument, however, finding
17   jurisdiction proper in the courts of appeals because the environmental claims constituted "an assault
18   on an important ingredient of the FERC license."  Id. at 912.  The Yeutter court also noted that
19   "interested parties may challenge the legality of the [challenged] conditions—including their
20   conformity to NEPA and AIRA—in the circuit courts."  887 F.2d at 912.  In this way, the Ninth
21   Circuit did not vitiate the environmental claims but directed them to the same circuit court where
22   proper challenges to the programmatic statute were supposed to be brought.  To the extent that the
23   statutes in Yeutter (FPA, NEPA, and AIRFA) can be likened to those the instant case (FIFRA and
24   ESA), then, it is likely that plaintiffs would have to challenge EPA's conformity to ESA in the
25   circuit courts alongside the FIFRA claims, if FIFRA section 16(b) is found to apply.
26          Lastly, American Bird also relied on Turtle Island Restoration Network v. U.S. Dep't of
27   Commerce ("Turtle Island"), 438 F.3d 937 (9th Cir. 2006).  There, plaintiffs claimed that the
28   reopening of a swordfish fishery violated environmental statutes, but did not sue under the

9

Magnuson-Stevens Fishery Conservation and Management Act of 1976 ("Magnuson Act"), 16 U.S.C. sections 1801 et seq., the regulatory statute under which the Department of Commerce acted. 438 F.3d at 938. The Ninth Circuit held that the Magnuson Act's exclusive jurisdiction provisions controlled because "Turtle Island's claims, though 'framed . . . in terms of violations of the [Administrative Procedure Act and environmental statutes]' were 'in actuality . . . challenge[s] to the reopening of the Fishery." Id.; see also Geertson Farms, Inc. v. Johanns, 439 F. Supp. 2d 1012, 1020 (N.D. Cal 2006), aff'd on other grounds, 2008 WL 4020108 (9th Cir. 2008) (finding plaintiffs' ESA failure-to-consult claim directly challenged Federal Food Drug and Cosmetic Act's tolerance for a pesticide and therefore fell under the purview of the FFDCA's exclusive review provision).

B.   General and Specific Grants of Jurisdiction

American Bird and its predecessors in the Ninth Circuit also establish that "where one statute provides for exclusive jurisdiction in the courts of appeals and the other for general jurisdiction in the district courts, jurisdiction is generally proper in the courts of appeals." 2008 WL 4459086 at *4. The Ninth Circuit in Yeutter, for example, reasoned that "when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation." Id. It held that "the specific jurisdictional provisions of the FPA which expressly govern review of disputes concerning licensing of hydroelectric projects control over the general and widely applicable procedures that regulate NEPA, AIRFA and other statutory challenges." Id. Likewise, in Northwest Resource Info. Ctr. v. National Marine Fisheries Service, 25 F.3d 872, 875 (9th Cir. 1994), the Ninth Circuit held that plaintiffs' claims were essentially challenges to final agency actions pursuant to the Northwest Power Act, which explicitly confers exclusive jurisdiction on the circuit court and subsumes ESA's more general jurisdictional provisions. In the instant case, because the Ninth Circuit has established that the ESA is "of a general character governing citizen suits throughout the United States," FIFRA section 16(b)'s specific grant of exclusive jurisdiction to circuit courts would likely be found to control. See Northwest Resource Info. Ctr., 25 F.3d at 875.

C.   Plaintiffs' Arguments

Plaintiffs' reliance on Washington Toxics Coalition v. EPA ("Washington Toxics"), 413 F.3d 1024 (9th Cir. 2005), to support their argument that ESA's citizen suit provision provides an

1  independent basis for district court jurisdiction, is misplaced. In Washington Toxics, environmental
2  groups sued the EPA contending that it violated ESA section 7(a)(2) consultation requirements by
3  refusing to consult with the NMFS prior to approving the registration of pesticides. 413 F.3d at
4  1029. However, Washington Toxics did not "opine on the jurisdictional question" possibly at issue
5  in this case. American Bird., 408 F. Supp. 2d at 995. Rather, at issue was EPA's claim that it was
6  not bound by ESA consultation requirements because pesticide registration and rescissions are only
7  governed by FIFRA. Id. at 1030. The court rejected EPA's position, finding that "an agency cannot
8  escape its obligation to comply with the ESA merely because it is bound to comply with another
9  statute that has consistent, complementary objectives." Id. at 1032. The court was silent, however,
10 about the interaction between the jurisdictional provisions of FIFRA and the ESA.

11         Plaintiffs' invocation of the Eighth Circuit's decision in Defenders of Wildlife v. EPA
12 ("Defenders of Wildlife"), 882 F.2d 1294 (8th Cir. 1989), is also misplaced because its ruling runs
13 counter to more recent Ninth Circuit decisions. In Defenders of Wildlife, environmental groups
14 brought suit under the ESA and other wildlife statutes to challenge the continued use of the pesticide
15 strychnine. 882 F.2d at 1297. The Eighth Circuit held that plaintiffs could only maintain their ESA
16 claims because the other wildlife statutes did not provide a private right of action. Id. at 1299. The
17 court additionally noted that "If Defenders were suing only to cancel pesticide registrations, we
18 would require them to proceed under the FIFRA framework." Id. at 1299. Since plaintiffs weren't
19 seeking cancellation of the pesticides through their ESA claims but rather compliance with ESA
20 consultation requirements, they were able to litigate the ESA claims in district court outside of the
21 FIFRA framework, even if doing so might have incidentally led to cancellation of the pesticide. Id.
22 at 1299.

23         While Defenders of Wildlife bolsters plaintiffs' position, and was found to be persuasive by
24 this Circuit in Washington Toxics, it is not controlling precedent. In particular, while the Eighth
25 Circuit in Defenders of Wildlife did not view claims brought under environmental statutes and
26 unaccompanied by challenges to the actual regulatory statute (FIFRA) as collateral attacks to the
27 regulatory statute, the Ninth Circuit consistently has. As demonstrated in American Bird, Yeutter,
28 and Turtle Island, the Ninth Circuit views environmental law challenges related to different kinds of

11

registrations to be collateral attacks on agency procedures, and thus invokes the applicable regulatory statute's jurisdictional provisions.

Applying this Ninth Circuit precedent to the current action, plaintiffs' failure-to-consult claims under the ESA will likely be subject to FIFRA's exclusive review provision, if section 16(b) is in fact found to control in UFW. Thus, the court finds it appropriate to stay the ESA claims. That being said, the court does not reach the merits of whether FIFRA section 16(b) actually subsumes ESA's district court jurisdiction provision here and now. Practical and equitable considerations weigh strongly in favor of a stay of all proceedings. The Ninth Circuit set the following framework for determining whether to stay proceedings:

> [T]he competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Lockyer, 398 F.3d at 1110 (quoting CMAX, Inc. v. Hall, 300 F.2d 265 (9th Cir. 1962)).

In terms of the possible damage which may result from the stay, the court agrees with defendants that damage to plaintiffs would be minimal. UFW is on expedited review to the Ninth Circuit and briefing concluded in September. See EPA Mtn for Stay at 8; see also Lockyer, 398 F.3d at 1111 (finding that a stay could be granted if "it appears likely that the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court"). While the court is cognizant of the alleged harm to threatened and endangered species that may result from continued use of the pesticides in question, it is equally aware that plaintiffs themselves did not bring suit against EPA until two years after the REDs were issued.

In measuring how a stay would serve the "orderly course of justice," the court places much weight on the likelihood that a decision affirming UFW will bear on both the FIFRA and ESA claims. It would therefore be premature to hear the ESA claims where resolution of UFW may compel FIFRA claims to be dismissed or heard in a court of appeals. See Lockyer, 398 F.3d at 1111 (a trial court may "enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case") (quotation and citation omitted). Moreover, the United States Supreme Court has warned against "[subjecting] essentially identical agency action to initial review in

12

different levels of the federal courts." <u>Forelaws on Board v. Johnson</u>, 709 F.2d 1310, 1313 (9th Cir. 1983) (discussing <u>Crown Simpson Pulp Co. v. Costle</u>, 445 U.S. 193 (1980)).  The balance of these competing considerations thus weighs in favor of staying the entire case and the two related cases.

<u>CONCLUSION</u>

For the foregoing reasons, defendants' motions to stay the entirety of the instant case and both related cases are **GRANTED** pending the Ninth Circuit's decision in <u>United Farm Workers v. EPA</u>.

IT IS SO ORDERED.

Dated: November 24, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Sea Mar Community Health Center, Pineros y Campesinos Unidos Del Noroeste, and Beyond Pesticides. Beyond Pesticides and PCUN are also parties to both of the related cases.

2. On oral argument, however, plaintiffs supplemented their concession with the contention that EPA's alleged continuing violations serves to toll the FIFRA statute of limitations. Plaintiffs asserted that because the EPA retains an ongoing discretion to alter or cancel pesticide reregistrations, the court should consider as timely all relevant FIFRA violations that would otherwise be time barred, based on the EPA's ongoing failure to assess the risks and benefits of the pesticides at issue. Because this issue is not presently before the court, it need not be considered further herein.